UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DANIEL LYNN WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| VS. | ) No. 20-1171-JDT-cgc ) |
| HILTON HALL, JR., ET AL., | ) ) |
| Defendants. | ) ) ) |

ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT,
AND GRANTING LEAVE TO AMEND

On July 7, 2020, Plaintiff Daniel Lynn Williams, who is currently an inmate at the Correctional Facility (HCCF) in Whiteville, Tennessee, filed a *pro se* civil complaint and a motion to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) On August 6, 2020, U.S. District Judge William L. Campbell, Jr. granted Williams pauper status, assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b), and transferred the case to this district, where venue is proper. (ECF No. 4.) The complaint asserts claims for failure to protect Williams, inadequate medical care, unconstitutional conditions of confinement, and retaliation. Williams sues the following Defendants: HCCF Warden Hilton Hall, Jr.;[1] Case Manager First Name Unknown (FNU) Malone; Sergeant FNU

---

[1] Williams does not provide Warden Hall's full name, but it is found on the Tennessee Department of Correction website. *See* www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html. The Clerk shall MODIFY the docket to include Defendant Hall's full name. The Clerk shall also add CoreCivic as a Defendant.

Mann; Unit Manager FNU Jones; and CoreCivic, a private company which manages the HCCF.[2] (ECF No. 1 at PageID 1-3, 16.)[3]

Williams alleges that in April 2020 another inmate, a gang member, raped him, struck him in the head, and compelled him to perform oral sex "over gang members . . . accusing me of causing them to lose [their] 1000 Touchscreen cell phone." (*Id*. at PageID 13.)  After requesting help from the J-B Unit Counselor, without success, Williams was able to "reach out" to "mental health," who helped him get placed in protective custody two days later.  (*Id.*)  The assailant was placed in punitive segregation because of the attack and the resulting PREA complaint filed by Williams. (*Id.* at PageID 5.)

Shortly after Williams was placed in protective custody, "several guards [were] spreading the news to each other about [his] rape." (*Id.* at PageID 13.)  Williams states other inmates in protective custody learned from the guards "about . . . [their] gang brother getting in trouble over raping me & [their] gang brothers losing [their] cell phone." (*Id.* at PageID 14.)  In retribution, the assailant's "gang brothers" allegedly put a knife to Williams's throat and threatened to kill him, hit him in the head, compelled him to pay $50 weekly to avoid further violence, stole his property, and threw urine under his cell door.  (*Id*. at PageID 5-6, 14.)  Unidentified guards allegedly allowed

---

[2] *See* www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html ("Hardeman County Correctional Facility is owned by the Hardeman County Correctional Facilities Corporation, which contracts with CoreCivic for management of the prison").

[3] The caption of the complaint lists unidentified G-Unit Guards as defendants (ECF No. 1 at Page ID 1), and a certificate of service appended to the complaint suggests Williams may also intend to sue an unnamed "J-B Unit Counselor." (*Id.* at PageID 16.)  However, service of process cannot be made on such unidentified parties, and the filing of a complaint against unknown defendants does not toll the running of the statute of limitation.  *See Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548-49 (6th Cir. 2016) ("The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party." (*citing Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996))).

the other inmates access to the cells of sex offenders such as Williams, allowing them to steal the sex offenders' property. (*Id*. at PageID 6; *see also id.* at PageID 14 ("Guards don't do [their] job[,] they be sleeping in control booth here and let inmates in other inmates cells . . . .").)

Williams alleges the "[g]uards will not move" him to another location, away from the inmates who threatened him at knife-point. (*Id*. at PageID 5.) He also asserts Sergeant Mann refused to help him be moved, verbally chastising and cursing him in front of other inmates for complaining about the threats; he contends this just made the situation worse. (*Id*. at PageID 5, 14.) Williams further states the "next day out of the blue a copy of my charges showing sex crime is out on [the] table in living area for inmates to see." (*Id.* at PageID 14.) Williams allegedly wrote to Warden Hall, Case Manager Malone, and Unit Manager Jones about having been threatened at knife-point, but they all ignored his letters. (*Id.* at PageID 5, 14.) Thus, according to Williams, the HCCF guards and Defendants Hall, Malone, Jones, and Mann all knew his life had been threatened. (*Id*. at PageID 6.)

Williams alleges he experiences paranoia, stress, and "shaking" as a result of the sexual assault, the harassment, and the threats of further violence from gang members; however, "they tell me I can't see a mental health [professional]." (*Id.* at PageID 5, 14.)

The complaint also contains allegations about Williams's conditions of confinement in the protective custody unit at the HCCF. He contends the guards refused to give him any toilet paper for three days so that he "had to hold [his] bowels." (ECF No. 1 at PageID 5, 14.) In addition, upon arriving in protective custody and being given his property, "all my prison clothes were gone" except for what he was wearing. (*Id.* at PageID 5.) However, Williams's repeated requests for new or clean clothes have been denied even though other inmates have been given new clothing.

(*Id*. at PageID 13-14, 15.)  Williams also states "I have no sheets or bedding . . . a mat that's barely 1" thick."  (*Id.* at PageID 15.)

Williams additionally alleges the HCCF guards withheld the toilet paper, clothing, and bedding from him in retaliation for reporting the gang member for rape and sexual assault.  (*Id.* ("guards told me not to cause gang affiliation they all treat me bad and constantly retaliating towards me, I have no sheets or bedding or clean clothes to wear cause this").)

Williams seeks compensation "for emotional and physical abuse" and transfer to a different prison.  (*Id.* at PageID 6, 15.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations

4

to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Williams filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Claims Against CoreCivic and Official Capacity Claims*: Williams does not state a claim against CoreCivic or against the HCCF Defendants in their official capacities.[4] "A private corporation that performs the traditional state function of operating a prison acts under color of

---

[4] Claims against the HCCF Defendants in their official capacities are treated as claims against their employer, CoreCivic.

state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, Williams "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* Williams does not allege the Defendants deprived him of constitutional rights based on an unconstitutional policy or custom of CoreCivic.

<u>*Claims Against Defendants Hall, Malone, and Jones*</u>: Williams also has not stated a claim against Defendants Hall, Malone, and Jones. Under § 1983, government officials may not be held liable under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of*

6

*Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Here, Williams asserts Defendants Hall, Malone, and Jones failed to respond to his letters complaining that he was in danger and was not being protected. However, he does not sufficiently allege that any of these Defendants, through their own individual actions, violated his constitutional rights.[5] He therefore fails to state a claim against Hall, Malone, or Jones in their individual capacities.

*Claims for Failure to Protect*: The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"). Accordingly, the Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

---

[5] At one point in the complaint, Williams makes the conclusory allegation that "guards [and] warden all treat me this [way] due to the whole rape incident." (ECF No. 1 at PageID 14.) He does not, however, actually allege Warden Hall was personally involved in violating his rights—he merely alleges the Warden ignored his letters.

7

A failure-to-protect claim has objective and subjective components. For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). It is not enough that the official "should have perceived" a significant risk, "but did not." *Farmer*, 511 U.S. at 838. An official's state of mind must be "more blameworthy than negligence" before liability will attach. *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). In analyzing the subjective component, courts must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

It is not clear from the complaint that Williams is alleging the Defendants should have protected him from the rape and sexual assault; if that is his assertion, however, he fails to state a claim. He does not explain why his assailant and other gang members believed he was responsible for the loss of their cell phone or allege that any of the named Defendants actually knew of, and yet disregarded, a significant risk the attack would occur. Instead, Williams appears to allege only that Defendants failed to protect him from the mistreatment and threats of further violence to which he was subjected after he was placed in protective custody.

Being attacked in prison, such as having a knife put to one's throat such as Williams experienced here, is not "part of the penalty that criminal offenders pay for their offenses against

society." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Williams thus alleges conditions posing a substantial risk of serious harm. In addition, Defendant Mann's alleged refusal to help Williams, as well as her chastising of him in front of other inmates for complaining about the threats, can reasonably be construed as deliberate indifference to Williams's safety.

Williams does not, however, allege he suffered any further sexual assault or any other physical injury that was more than *de minimis* as a result of the threats and other mistreatment by inmates in the protective custody unit. He alleges mental and emotional issues (*see*, *e.g.*, ECF No. 1 at PageID 5 (mental issues), PageID 14 (paranoia and nervousness)), and also states he had been "hit in [the] head." (*Id.* at PageID 14.) He does not allege the blow to the head caused any actual injury. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." The statute prevents a prisoner from recovering "for emotional or mental injury resulting from a constitutional violation under § 1983 absent a prior physical injury that is more than *de minimis*." *Jett v. Anderson Cnty.*, No. 3:20-CV-365-DCLC-HBG, 2021 WL 149842, at *1 (E.D. Tenn. Jan. 15, 2021) (citing *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010)).

The failure to allege more than a *de minimis* physical injury does not necessarily preclude Williams from pursuing injunctive or declaratory relief. *See Jett*, 2021 WL 149842, at *2; *Cheatham v. Haye*, 2:19-cv-10480, 2020 WL 3481645, at *3 (E.D. Mich. June 26, 2020). The only non-monetary relief he seeks, however, is a transfer to another facility. "[A] federal court only has the authority to order a state to transfer a prisoner in the rare and extreme situation where an inmate's life is imminent or grave danger." *Neal v. Woosley*, No. 4:20-CV-P167-JHM, 2020

WL 7327313, at *4 (W.D. Ky. Dec. 11, 2020). Here, though Williams states he fears for his life, his allegations do not suggest he is in such imminent or grave danger that would permit this Court to order his transfer.

Williams therefore fails to state an Eighth Amendment claim against any named Defendant or any unidentified HCCF employee for failure to protect him.

*Eighth Amendment Claims for Denial of Medical Care*: The Court also reviews claims regarding the denial of medical care under the Eighth Amendment. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The objective component of an Eighth Amendment medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component again requires that jail officials have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Prison officials violate

10

the Eighth Amendment when they subjectively know of an excessive risk of harm to an inmate's health or safety and disregard it. *Farmer*, 511 U.S. at 837.

Mental health issues can fall within the scope of a serious medical need. *See Shye v. Melton*, No. 13-0113, 2014 WL 6873154, at *5 (M.D. Tenn. Dec. 3, 2014). However, Williams does not specifically allege who denied his requests for mental health services. (*See* ECF No. 1 at PageID 6 (stating only "they tell me mental health don't want to see me"), PageID 14 (unnamed "guards and case manager").) Therefore, he has not sufficiently alleged that any of the named Defendants were deliberately indifferent to his serious medical needs and fails to state an Eighth Amendment claim for denial of medical care.

*Conditions of Confinement Claims*: The allegations regarding denial of toilet paper, clothing, and bedding arise under the Eighth Amendment as well. As explained at length *supra*, Williams must meet both the objective and subjective prongs of the Eighth Amendment in order to state a claim to relief. *See Farmer*, 511 U.S. at 834. The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive him of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes*, 452 U.S. at 347; *Estelle*, 429 U.S. at 103-04. A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

The alleged failure to provide Williams with toilet paper does not meet the objective prong of the Eighth Amendment analysis. The Sixth Circuit has explained: "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount[.]" *LaPine v. Savoie*, No. 16-1893, 2017 WL 6764085, at *5 (6th Cir. Aug. 11, 2017) (three hours in a soiled jumpsuit "was a temporary hardship that did not

11

rise to the level of a constitutional violation") (internal citations omitted). Considering this length of exposure concept here, Williams's three days without toilet paper does not rise to the level of an Eighth Amendment violation. *See, e.g., Cates v. George*, No. 13-100, 2016 WL 4446155, at *9 (M.D. Tenn. July 19, 2016); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper . . . and the like do not rise to the level of a constitutional violation"). Williams also does not contend he suffered any actual harm from having to "hold his bowels" because of the temporary lack of toilet paper. As for the subjective prong, this claim is similarly deficient. Williams alleges only that a "guard" refused to provide him with additional toilet paper. He does not contend that any named Defendant knew he lacked toilet paper or disregarded an excessive risk to his harm or safety because of that lack.

As to the denial of clothing, it is true that clothing is among life's minimal civilized necessities guaranteed by the Eighth Amendment, *see Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006). However, Williams does not offer facts suggesting the clothing he did have was insufficient to keep him warm or otherwise inadequate. That is, he does not allege outright denial of clothing altogether. He alleges only that what he wore on his back was undesirable, old, and dirty. His discomfort and displeasure does not rise to the level of "extreme deprivation" required to violate the Constitution. Similarly, the complaint does not allege that sleeping on a thin mattress without sheets caused Williams any actual harm as opposed to mere discomfort. The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298.

Furthermore, Williams has not shown that any of the Defendants were deliberately indifferent to his need for clothing and bedding. Instead, he makes only blanket assertions about his desire for cleaner or newer clothes and better bedding. He does not assert that the failure to receive new garments or bedding can be ascribed to any named Defendant. (*See* ECF No. 1 at

12

PageID 13-15.) Williams therefore fails to state an Eighth Amendment conditions-of-confinement claim.

*First Amendment Retaliation Claims*: Williams alleges the "Warden and prison employees" retaliated against him for reporting the gang member who sexually assaulted him by ignoring his requests for new clothes, for toilet paper, and for help in being moved away from the inmates who threatened him. (ECF No. 1 at PageID 4; *see also id*. at PageID 15.)

The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution"). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76).

In this case, Williams does not state a First Amendment claim for unconstitutional retaliation.  He does not identify any causal connection between his reporting the sexual assault and adverse action taken against him by any named Defendant.  (*See* ECF No. 1 at PageID 15 (alleging only that unidentified "guards" all treat me bad and constantly retaliate towards me").)

Williams alleges Defendant Mann verbally cursed and chastised him for asking for her help in combating the threats against him.  (ECF No. 1 at PageID 14.)  He does not, however, sufficiently allege a causal connection between her refusal to help him and his previous reporting of the sexual assault.[6]  Williams further alleges the day after Mann confronted him "out of the blue a copy of my charges showing sex crime is out on the table in living area for inmates to see." (*Id.*) Though he does not expressly state it was Mann who disclosed his sex crimes, that is the implication.  But there is no allegation Williams suffered any actual harm as a result of other inmates seeing that document.

Moreover, the conclusory assertion that Warden Hall retaliated against Williams is also not supported by sufficient factual allegations.  Williams does not contend the Warden was personally involved in the adverse actions taken against him.  Instead, the only factual allegation concerning the Warden is that he ignored Williams's letters of complaint.  *See supra* pp. 7-8 and note 5.  This single allegation, without more, cannot support a claim of retaliation; otherwise, every denial of a grievance or complaint by prison administrators or supervisors would be actionable.

<u>*Claim of Inadequate Grievance Procedure*</u>:   To the extent Williams is alleging the grievance procedure at the HCCF is inadequate (*see* ECF No. 1 at PageID 7-8), he does not state a claim.  Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young*

---

[6] Williams does not allege Mann had anything to do with denying him toilet paper, clothing, and bedding.

14

*v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

For all of the foregoing reasons, Williams's complaint fails to state a claim on which relief may be granted and is subject to dismissal.

*Opportunity to Amend Complaint*: The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Williams should be given the opportunity to amend his complaint.

*Conclusion*: In conclusion, the Court DISMISSES Williams's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). Leave to amend, however, is GRANTED.

Any amended complaint must be filed within twenty-one days after the date of this order, **on or before April 16, 2021**. Williams is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient

facts to support each claim without reference to any extraneous document.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Williams fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                                    s/ **James D. Todd**
                                                    JAMES D. TODD
                                                    UNITED STATES DISTRICT JUDGE